IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RALPH HARRIOTT, JR. and GILLIAN
HARRIOTT,

    Plaintiffs,

v.

BANK OF AMERICA HOME LOANS,

    Defendant.

3:12-CV-00457
(JUDGE MARIANI)

# MEMORANDUM OPINION

## I. Introduction

Plaintiffs Ralph and Gillian Harriott brought this action against Bank of America alleging various fraudulent practices in connection with their home mortgage. The gravamen of their Complaint concerns alleged statements that they claim Bank of America made falsely and maliciously, instructing Plaintiffs to cease payment on their mortgage for approximately twenty-eight months. Presently before the Court is a Motion to Dismiss several of Plaintiffs' claims (Doc. 10). For the reasons set forth below, the Court will grant the Motion in part, because the Plaintiffs have not adequately pled the elements of their claims. However, as specified below, the Court will allow Plaintiffs leave to amend Count II (Fraud), Count V (Fair Credit Reporting Act), and Count VI (Fair Debt Collection Practices Act), and will allow Plaintiffs leave to raise Count VII

(Attorney's Fees) at the proper time and place, consistent with Federal Rule of Civil Procedure 54(d)(2). Because amending Count IV (Real Estate Settlement Procedures Act) would be futile, the Court will dismiss Count IV with prejudice.

## II. **Factual Allegations**

Plaintiffs Ralph and Gillian Harriott purchased a home in Milford, PA on May 12, 2006. (Compl., Doc. 1, at ¶ 4.) "In order to finance this purchase, Plaintiffs simultaneously borrowed approximately $175,000 from Home123 Corporation and simultaneously signed a promissory note and mortgage in favor of Home123 Corporation." (*Id.* at ¶ 5.) At some unspecified time, "[t]he promissory note and mortgage were duly transferred to" Bank of America. (*Id.* at ¶ 6.)

The issues giving rise to this lawsuit came about when Plaintiffs, on June 17, 2009, submitted a Loan Modification Application to Bank of America. (*Id.* at ¶ 11.) Allegedly, at this time, "Plaintiffs were instructed to stop making their monthly mortgage payments until the review was complete." (*Id.* at ¶ 13.) It was not until October 27, 2011 that the review was completed. (*Id.* at ¶ 14.) However, the Plaintiffs considered the terms of the modification unfavorable, because the proposed modification would increase their payments by $209.79 per month, so the Plaintiffs rejected the modification. (*Id.* at ¶¶ 15-16.) Shortly thereafter, Bank of America informed the Plaintiffs that $33,147.14 was owed in past due mortgage payments for the

2

approximately twenty-eight months during which Plaintiffs had not paid their mortgage, allegedly in reliance on Bank of America's instructions to not pay until the review was complete. (*Id.* at ¶¶ 17-18.) The Complaint implies that the instruction was knowingly false, and was made to induce the Harriotts to stop making payments so that Bank of America could profit from late fees, interest charges, and foreclosing on the Harriotts' home. (*Id.* at ¶¶ 30, 33; *see also* Pls.' Resp. to Bank of America's Mot. to Dismiss, Doc. 16, at 2 ("It was Defendant's intent to charge Plaintiff substantial late fees, interest charges, and attorney fees in order to bolster its own bottom line.").)

Plaintiffs alleged seven causes of action. Five of these are the subject of this Motion to Dismiss: Count II (Fraud), Count IV (Real Estate Settlement Procedures Act), Count V (Fair Credit Reporting Act), Count VI (Fair Debt Collection Practices Act), and Count VII (Attorney's Fees).

The remaining claims not subject to this Motion are: Count I (Unjust Enrichment)[1] and Count III (Unconscionability of the Mortgage Contract).

---

[1] Though Plaintiffs are allowed to plead alternative statements of their claim, *see* FED R. CIV. P. 8(d)(2), an unjust enrichment claim appears inappropriate under the facts currently alleged. "A cause of action for unjust enrichment arises only when a transaction is not subject to a written or express contract." *Ne. Fence & Iron Works v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 669 (Pa. Super. Ct. 2007).

> A cause of action for unjust enrichment may arise only when a transaction of the parties not otherwise governed by an express contract confers a benefit on the defendant to the plaintiff's detriment without any corresponding exchange of value. In that event, the law may imply a contract, requiring the defendant to pay to the plaintiff the value of the benefit conferred. Such a "quasi-contract" imposes a duty not as the result of any agreement, whether express or implied, but in spite of the absence of an agreement where the circumstances demonstrate that it would be inequitable for the defendant to retain the benefit conferred without payment. Where an express contract already exists to define the parameters of the parties' respective duties, the parties may

3

## III. Standard of Review

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

---

avail themselves of contract remedies and an equitable remedy for unjust enrichment cannot be deemed to exist.

*Villoresi v. Femminella*, 856 A.2d 78, 84 (Pa. Super. Ct. 2004) (internal citations and quotation marks omitted). Because Plaintiffs allege that a written mortgage in fact existed which delineated the terms of payment, (see Compl. at ¶¶ 5-7, Ex. A), the Court is unsure of how an unjust enrichment claim can lie under Pennsylvania law. However, because the parties have not raised this issue, the Court will not rule on it here.

4

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even if "complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

5

# IV. <u>Analysis</u>

a. Count II: Fraud

Plaintiffs allege that someone at Bank of America knowingly made materially false statements to induce them to default on their mortgage. However, Plaintiffs leave out a litany of important facts, including:

- Who made these statements?

- When were they made?

- Where were they made?

- What, in particular, did the person say?

- What was the context of the conversation in which these statements were made?

- Was the person who made these statements employed by Bank of America or by an agent of Bank of America?

- If so, were these statements made in the scope of the person's employment?

- Did the person who made these statements know that the statements were false?

- If not, should the person have known that they were false?

Plaintiffs do not answer any of these questions, but simply allege that some, unspecified false statements were made. Their allegations, therefore, "do not permit the court to infer more than the mere possibility of misconduct." *Id.* This omission is especially glaring given that Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Plaintiffs provide the Court instead with only vague and unsupported allegations.

Moreover, Plaintiffs plead no facts to explain how Bank of America stood to profit from losing out on two years of timely mortgage payments. Presumably, late fees and foreclosure are primarily meant as means to *discourage* late payment and to *offset* any losses that the bank might incur therefrom, and not as independent sources of profit. After all, losing out on timely payments is itself a cost to the creditor; interest charges are commonly understood as compensation for the creditor's lack of access to capital in the period after it lends the money but before it receives repayment. It is of course conceivable that, in certain unique cases, Bank of America could profit more by foregoing regular payments for twenty-eight months and then collecting late fees than it would profit from following the original terms of the mortgage agreement. But Plaintiff has provided no facts (or even arguments) to indicate that this counterintuitive scenario actually occurred in the present case.

Therefore, the Court will dismiss Count II without prejudice. The Court will grant Plaintiffs leave to amend their Complaint so as to set forth factual allegations in accordance with the requisite pleading standards discussed above.

   b. Count IV: The Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, et seq.

In relevant part, RESPA requires that

> [e]ach person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, <u>at the time of application for the loan</u>, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding.

12 U.S.C. § 2605(a) (emphasis added).

Plaintiffs allege that this notice was never given, even though Home123 Corporation later "assigned, sold or transferred the ownership and servicing of the subject mortgage to Bank of America." (Compl. at ¶¶ 48-50.)

Plaintiffs' own pleadings make clear that this Count cannot stand. On the face of Plaintiffs' Complaint, it is clear that the only entity that could have made such disclosures was Home123, the originating lender. (*See id.* at ¶ 49 ("At the outset of the mortgage, Home123 Corporation owned and serviced Plaintiff's [sic] mortgage.").) But Home123 is not a named defendant. Instead, Plaintiffs seek to hold Bank of America liable for a

8

completely different entity's non-disclosures. Plaintiffs have cited no authority for such a claim, nor Court is not aware of any that might justify it.[2]

Because Bank of America was not a party to the mortgage loan transaction at the time that Plaintiffs made application for the mortgage loan—which is when these disclosures were required to be made—it could have had no legal obligation to make the disclosures to Plaintiffs. Allowing leave to amend Plaintiffs' RESPA claim would therefore be futile. Accordingly, this claim is denied with prejudice.

  c. Count V: The Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq.

Plaintiffs' next claim arises under Section 1681s-2(a)(1)(A) of the Fair Credit Reporting Act. That section requires that "[a] person shall not furnish any information

---

[2] Moreover, even if this claim were brought against the correct defendant, it would still be barred under RESPA's three-year statute of limitations for cases brought under section 2605. See 12 U.S.C. § 2614. Though Plaintiffs invoke the doctrine of equitable tolling, (see Pls.' Resp. to Bank of America's Mot. to Dismiss at 2), equitable tolling is only
> appropriate in three situations: (1) when the defendant has actively misled the plaintiff respecting the facts which comprise the plaintiff's cause of action; (2) when the plaintiff in some extraordinary way has been prevented from asserting his rights; and (3) when the plaintiff has timely asserted his rights in the wrong forum.

Becker v. Chicago Title Ins. Co., 2004 WL 228672, at *4 (E.D. Pa. 2008) (citing U.S. v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998)). The Third Circuit has held that "equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994) (internal quotation marks, alterations, and citations omitted).

Here, there is no allegation that Plaintiffs have been prevented from asserting their rights or that Home123 did anything to conceal the non-disclosure. Even assuming that Plaintiffs' "lack of sophistication with respect to mortgage documents" prevented them from noticing the error, (see Pls.' Resp. to Bank of America's Mot. to Dismiss at 3), this puts them in a position no different from legions of other plaintiffs. It is not such a violation of equity as to make the tolling doctrine apply, especially when Plaintiffs do not fall into any of the enumerated tolling categories.

However, given that Home123 is not a party to this case, the Court need not resolve the statute of limitations issue now.

relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). However, Plaintiffs allege that Bank of America "has reported to multiple credit reporting agencies . . . that Plaintiff are [sic] delinquent in their payments of the subject mortgage loan." (Compl. at ¶ 55.) These reports adversely affected Plaintiffs' credit rating. (Id. at ¶ 56.) Because Plaintiffs allege that they "have made all required mortgage payments as instructed by Defendant," they argue that these inaccurate statements give rise to a cause of action. (Id. at ¶¶ 54-57.)

A recent Third Circuit case is directly on point. At the outset, the Court noted:

The FCRA also has several provisions that create liability for violations of the Act. See, e.g., 15 U.S.C. § 1681n (creating civil liability for willful noncompliance with any portion of the Act); id. § 1681o (creating civil liability for negligent noncompliance with any portion of the Act). These provisions, however, *cannot be used by a private individual to assert a claim for a violation of § 1681s-2(a), as such claims are available only to the Government.* Id. § 1681s-2(c) ("[S]ections 1681n and 1681o of this title do not apply to any violation of—(1) subsection (a) of this section. . . ."); id. § 1681s-2(d) ("The provisions of law described in paragraphs (1) through (3) of subsection (c) of this section . . . shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title."). This leaves 15 U.S.C. § 1681s-2(b) as the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information. See Chiang v. Verizon New England Inc., 595 F.3d 26, 35 (1st Cir. 2010); Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009); Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 149 (4th Cir. 2008).

SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 358 (3d Cir. 2011) (emphasis added).

> Moreover, even if Plaintiffs brought this claim under § 1681s-2(b),
>
>> this cause of action is not without limitations. The duties that are placed on furnishers of information by this subsection are implicated only "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s–2(b)(1).

*Id.*

Accordingly, "a private citizen wishing to bring an action against a furnisher must first file a dispute with the consumer reporting agency, which then must notify the furnisher of information that a dispute exists. Only after this notification can the furnisher face any liability to a private individual." *Id.* at 359.

> In other words,
>
>> a consumer must first alert the credit reporting agency that reported the allegedly erroneous information of a dispute. It is then up to the reporting agency to inform the furnisher of information that there has been a dispute, thereby triggering the furnisher's duty to investigate. It is only when the furnisher fails to undertake a reasonable investigation following such notice that it may become liable to a private litigant under § 1681s–2(b).

*Id.*

Plaintiffs' Complaint contains no hint that they followed the statutorily proscribed process. In their Brief in Opposition, they argue only that "Plaintiffs directly contacted Defendant [Bank of America] several times throughout the loan modification process" and that "Plaintiffs lack knowledge and information to state whether Defendant was ever contacted by a credit reporting agency with regard to this dispute." (Pls.' Resp. to Bank

11

of America's Mot. to Dismiss at 3.) By all indications, then, they have not fulfilled the statutory requirements.

The Court will therefore dismiss this claim, but allow Plaintiffs leave to amend. In order to state a claim, Plaintiffs' Amended Complaint should (1) allege the proper section of the FCRA and (2) state whether the Plaintiffs in fact followed the reporting procedure required by the FCRA.

d. Count VI: Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq.

Under the FDCPA, a debt collector must disclose in its initial oral or written communication "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). According to the Plaintiffs, "Bank of America . . . failed to disclose its status as a debt collector to Plaintiffs, nor did either make any statements that they were attempting to collect a debt from Plaintiffs." (Compl. at ¶ 62.)

However, under the terms of the statute, Plaintiffs' Complaint does not establish Bank of America as a debt collector. FDCPA section 1692a(6) states,

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

12

15 U.S.C. § 1692a(6).

Conversely, the statutory definition of "creditor" appears to fit Bank of America much better:

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

*Id.* at § 1692a(4); *see also Staub v. Harris*, 626 F.3d 275, 277 (3d Cir. 1980) ("The statute does not apply to persons or businesses collecting debts on their own behalf."); *cf. also FTC v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007) ("[A]s to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive.").

Plaintiffs, however, base their argument on one of the exceptions to the definition of "debt collector." The statute exempts from such definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* at § 1692a(6)(F)(iii); *see also* Pls.' Resp. to Bank of America's Mot. to Dismiss at 3. This exception, read in conjunction with the exception to the term "creditor," above, provides the grounding for a Seventh Circuit case, *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003), which Plaintiffs cite in support

13

of their position. (*See* Pls.' Resp. to Bank of America's Mot. to Dismiss at 3.) The *Schlosser* court held that "the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." *Schlosser*, 323 F.3d at 536. The Third Circuit has held the same. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000).

The *Schlosser* court explained that the FDCPA distinguishes between debts that were in default at the time of acquisition and those that were not because

> for debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category [creditor or debt collector]. If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector. To distinguish between these two possibilities, the Act uses the status of the debt at the time of the assignment.

*Id.* at 536.

Plaintiffs have not alleged when exactly the debt was transferred. But the general timeline according to Plaintiff's Complaint appears to be that Defendant first obtained the loan, and only after doing so instructed Plaintiffs not to pay, and only after these instructions did Plaintiff in fact cease payments. (See Pls.' Compl. at ¶¶ 6, 11-13.) But if this is an accurate description of the facts, then Defendant cannot meet the statutory definition of debt collector, because the Plaintiffs' alleged default only happened after Bank of America obtained the loan. Therefore, Bank of America would not fall into

14

*Schlosser* or *Pollice*'s exceptions for a creditor obtaining an already-defaulted loan, but instead falls squarely under the statutory definition of "creditor."

Therefore, the Court will dismiss Plaintiffs' FDCPA claim as currently pled. However, consistent with the Court's grant of leave to amend the other claims, the Court will allow Plaintiffs leave to amend their FDCPA claim on one narrow ground, namely: to include any well-pled allegation showing that the alleged instruction not to pay, and the concomitant cessation of payments creating the default, happened before Bank of America obtained the loan. Only if such was the case could Bank of America conceivably be considered a "debt collector" under the FDCPA.

e. Count VII: Attorney's Fees

Finally, Plaintiffs bring an independent cause of action for attorney's fees. But "attorney's fees" is not an independent cause of action. Federal Rule of Civil Procedure 54(d)(2)(A) states that "a claim for attorney's fees . . . must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." FED. R. CIV. P. 54(d)(2)(A). If Plaintiffs believe that the substantive law in their remaining claims requires that they raise attorney's fees as an element of damages in an amended complaint, then they may do so. Otherwise, the proper submission of this claim is by motion after judgment. *See* FED. R. CIV. P. 54(d)(2)(B) (timing and contents of motion for attorney's fees).

The Court will therefore dismiss Plaintiffs' attorney's fees claim, but will allow Plaintiffs leave to raise the issue again at the proper time and manner, consistent with Federal Rule of Civil Procedure 54 and any applicable statutory authorization.

## V. Conclusion

For the foregoing reasons, the Court will dismiss Counts II, V, and VI with leave to amend; dismiss Count IV with prejudice; and dismiss Count VII with leave to raise it later in accordance with the Federal Rules. A separate Order follows.

Robert D. Mariani

United States District Judge